we modify the sentencing order to state that Matthews is entitled to credit for time served in the amount of 562 days against the aggregate of the minimum and the aggregate of the maximum sentences of imprisonment and not as to each sentence individually.

AFFIRMED IN PART AS MODIFIED, VACATED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.

———————————

OAK HILLS HIGHLANDS ASSOCIATION, INC., APPELLANT, V.
SCOTT LeVASSEUR, PERSONAL REPRESENTATIVE OF
THE ESTATE OF WILLIAM LeVASSEUR, SR.,
ET AL., APPELLEES.

___ N.W.2d ___

Filed April 1, 2014.    No. A-12-1173.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Reversed and remanded for further proceedings.

Ben Thompson, of Thompson Law Office, P.C., L.L.O., for appellant.

Albert M. Engles and James C. Boesen, of Engles, Ketcham, Olson & Keith, P.C., for appellee Scott LeVasseur, as personal representative.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

Inbody, Chief Judge.

## INTRODUCTION

Oak Hills Highlands Association, Inc. (the Association), appeals the order of the Douglas County District Court which entered summary judgment in favor of the appellees. In this case, the Association claims that its adoption of the Nebraska Condominium Act (NCA) allowed for the Association to assess certain special assessments against the owner of a condominium for expenses incurred as a result of a fire caused by the owner's misconduct. See Neb. Rev. Stat. §§ 76-825 to 76-894 (Reissue 2009 & Supp. 2013). The district court determined that the Association's "Revised Declaration and Master Deed" (Revised Declaration) and bylaws did not expressly adopt the NCA and rejected the claims of the Association.

## STATEMENT OF FACTS

The circumstances of this case stem from a fire which destroyed the condominium owned by William LeVasseur, Sr. LeVasseur owned the real estate referred to as "apartment #10" of the Oak Hills Highlands condominium property, regime 3, in Omaha, Nebraska, and he was a member of the Association. On October 11, 2009, a fire occurred at LeVasseur's condominium, allegedly beginning after LeVasseur fell asleep smoking a cigarette near his oxygen tank. The fire caused an estimated $243,683.43 in damages. The Association claims that as a result of the fire, their insurance premiums increased significantly. The Association claims that the fire was caused by LeVasseur's misconduct and that, as a result of the alleged misconduct, the increase in the Association's insurance premiums was solely due to LeVasseur. The Association imposed a special assessment against LeVasseur for the total amount of its increased premiums.

The Association's annual insurance premium increased from $39,120 to $65,325, which the Association alleges was an increase of $15,648 for a claim record related to the fire and a $10,557 increase as a result of a statewide increase for all condominiums. The Association alleges that the 3-year premium increase totals $46,944, in addition to interest in

the amount of $14,482.17 and attorney fees and other charges of $16,691.37, all of which the Association indicates that LeVasseur, who passed away in February 2010, and now his estate, refused to pay. The Association filed a notice of assessment with the Douglas County register of deeds, which placed a lien on the property.

On October 20, 2010, the Association filed a complaint in equity for a foreclosure of the assessment lien seeking a decree of foreclosure of liens imposed as a result of the Association's special assessments against LeVasseur totaling $37,945. The complaint alleges that LeVasseur is the record owner of real estate referred to as "apartment #10" of the Oak Hills Highlands condominium property, regime 3, and that the special assessments were imposed and not paid by LeVasseur, nor were they paid by his estate upon his passing. The complaint further indicates that 18 percent interest, prelitigation lien filing charges, and attorney fees had also accrued.

Scott LeVasseur, the personal representative of LeVasseur's estate and also LeVasseur's son, filed an answer in his capacity as personal representative generally denying the Association's complaint and requesting that it be dismissed. Scott and his siblings filed an answer as individuals also generally denying the Association's complaint and seeking its dismissal.

In August 2011, Scott, as personal representative, filed a motion for summary judgment indicating the Association alleged that LeVasseur violated the terms of the Association's covenants from which the special assessments were imposed, but that the special assessment was invalid. The Association also filed a motion for summary judgment, and the matter was set for hearing.

The district court entered an order overruling both parties' motions for summary judgment. The district court found that the language in the bylaws was not as expansive as the language of the NCA, which the Association had not adopted, and instead "limit[ed] the exposure for misconduct" to that enumerated in the bylaws. The court concluded that it was not satisfied the bylaws allowed for a special assessment such as was levied against LeVasseur and that, furthermore, there was a question as to the meaning of what the phrase "the

reasonable expenses incurred" encompassed as set forth in the Association's bylaws.

Thereafter, Scott, as personal representative, filed a motion for reconsideration alleging that the only expenses the Association actually incurred was the $2,000 insurance deductible which was paid by LeVasseur. The Association also filed a motion for reconsideration indicating that any question as to whether or not the NCA had been adopted by the Association was answered in the bylaws which specifically state that "the Association desires to adopt the provisions of the [NCA] in its entirety." The Association further alleged in the motion that under the NCA, it had the authority to assess special assessments for misconduct and that "'reasonable expenses incurred in the reconstruction or repair'" included the increase to insurance premiums.

On June 20, 2012, a hearing was held on the parties' motions to reconsider. The district court issued an order on the motions setting forth that the Association argued that the NCA was adopted by the Association in the Revised Declaration, which contains the statement, "WHEREAS, the Association desires to adopt the provisions of the [NCA] in its entirety." The court found that although the Revised Declaration states the Association desired to adopt the NCA, the court could not find that it did in fact adopt the NCA. The court further found that even if the Association did adopt the NCA in the Revised Declaration, the bylaws did not reference the NCA or the Revised Declaration nor did the bylaws state that the Revised Declaration was to be used in the interpretation of the bylaws. The court explained that the bylaws specifically set forth, in "Article XII, Common Expenses," under what circumstances there can be assessments, but then reference the "Act" in regard to other broad assessments. The court found that the specific language of the bylaws limiting the assessment applied. Specifically,

> the Court could not find where in the Revised Declaration . . . that it accepted the Act; and even if it did, there was no reference to this Revised Declaration . . . in the By-Laws; and this Court is of the opinion that these By-Laws limited the assessment authority of the Association and

did not grant it the full powers as the [NCA] would have allowed.

The court reaffirmed its prior order as to the interpretation of the Association's bylaws and assessment authority. The court further found that there were no further issues in the matter because all assessments that could have been assessed had been paid and that there were no disputes that all payments and damages pursuant to the bylaws had been paid by the Association or its insurance carrier. The district court sustained the motion for summary judgment filed by Scott, as personal representative, and dismissed the matter, with costs to the Association. It is from this order that the Association has timely appealed.

## ASSIGNMENTS OF ERROR

The Association assigns that the district court erred (1) by finding that the Revised Declaration and bylaws were ambiguous, (2) by granting summary judgment if there were ambiguities concerning material facts, (3) by failing to conclude that the Association adopted the NCA, (4) by finding that § 76-873 does not apply, (5) by finding that the Association's Revised Declaration and bylaws did not permit the Association to assess increased common expenses caused by the misconduct of the homeowner, and (6) by failing to order foreclosure of the Association's lien for special assessments unrelated to the fire.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Westin Hills v. Federal Nat. Mortgage Assn.*, 283 Neb. 960, 814 N.W.2d 378 (2012); *Howsden v. Roper's Real Estate Co.*, 282 Neb. 666, 805 N.W.2d 640 (2011).

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party

against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Westin Hills v. Federal Nat. Mortgage Assn., supra*; *Doe v. Board of Regents*, 283 Neb. 303, 809 N.W.2d 263 (2012).

## ANALYSIS

The Association argues that the "Act" referred to in the bylaws was explicitly adopted. In granting the motion for summary judgment filed by Scott, as personal representative, the district court concluded that the Association's Revised Declaration did not contain specific language in which the NCA was adopted and that the NCA was not specifically referenced in the bylaws. Thus, the district court concluded that the Association did not have the power to assess any special assessments that it might have been otherwise allowed to under the NCA.

In Nebraska, the Condominium Property Act governs those condominium regimes created prior to 1984. See Neb. Rev. Stat. §§ 76-801 to 76-824.01 (Reissue 2009). Condominium regimes created after January 1, 1984, are subject to the NCA. See § 76-826. The Association's original master deed was recorded on February 24, 1977, thus originally subjecting the Association to the Condominium Property Act. In June 1998, the Association filed its Revised Declaration. The Revised Declaration, as indicated in the statement of facts, sets forth that "WHEREAS, the Association desires to adopt the provisions of the [NCA] in its entirety."

The district court's determination essentially rested upon the Association's use of the word "desires" in the Revised Declaration. However, in reviewing the Condominium Property Act, specifically § 76-803, the language of the statute utilizes the word "desire" in reference to establishing a condominium property regime, such that,

> [w]henever a sole owner or the co-owners of property expressly declare, through the recordation of a master deed, which shall set forth the particulars enumerated in section 76-809, their desire to submit their property

to the regime established by sections 76-801 to 76-823, there shall thereby be established a condominium property regime.

Section 76-826(b) of the NCA specifically provides that amendments to the master deed, bylaws, and plans of any condominium regime created before January 1, 1984, are not invalidated by the Condominium Property Act if the amendment is permitted by the NCA. Further, § 76-826(b) provides that any such "amendment must be adopted in conformity with the procedures and requirements specified by those instruments and by sections 76-801 to 76-824." The plain language of § 76-803 establishes that a condominium regime is established through a recordation of the master deed.

In this case, the pleadings and admissible evidence offered at the hearing show that the Association's bylaws provided that the bylaws may be changed with 66⅔ percent of the votes cast by members and shall be operative upon the recording of the amendment with the register of deeds. The Revised Declaration and the revised and restated bylaws were both adopted by "more than seventy-five (75%) percent of the total basic value of the Unit Owners in the Condominium." The Revised Declaration set forth the unit owners' desire to adopt the NCA, and the Revised Declaration was registered with the register of deeds on June 3, 1998. Throughout the Revised Declaration, the Association required that certain actions be made in accordance with the "Act" and defined the "Act" as the NCA.

Therefore, in viewing the evidence in the light most favorable to the Association, and giving the Association the benefit of all reasonable inferences deducible from the evidence, we find that the Revised Declaration was adopted in conformity with the procedures and requirements specified in §§ 76-801 to 76-824.01 and that, as such, the Association, by recording the master deed, adopted the provisions of the NCA in its entirety as indicated in the Revised Declaration and in the Association's bylaws. The district court erred by finding to the contrary and by granting the motion for summary judgment filed by Scott, as personal representative, because genuine

issues of material fact remain. Having made this determination, we need not address the Association's remaining assignments of error.

## CONCLUSION

In conclusion, we find that the district court erred by granting the motion for summary judgment filed by Scott, as personal representative. Therefore, we reverse the district court's determination and remand the matter for further proceedings.

Reversed and remanded for
further proceedings.